UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
GARLAND ANDREW TYREE,

               Plaintiff,

    -against-

MICHAEL A. ZENK, et al.,

               Defendants.
------------------------------------------------------X

**MEMORANDUM & ORDER**

05 CV 2998 (RJD) (LB)

DEARIE, District Judge.

<u>Pro se</u> plaintiff Garland Andrew Tyree brings this suit pursuant to <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971), alleging that his constitutional rights were violated during a forcible cell extraction while he was an inmate at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. Defendants, prison officials and employees, move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## BACKGROUND

On October 29, 2003, according to the complaint, Lieutenant Thomas Cush of the Bureau of Prisons ("BOP") went to plaintiff's cell in MDC's Special Housing Unit and ordered him to "cuff up." When plaintiff asked why, he claims, Cush left, only to return a short time later accompanied by a BOP "extraction team." Plaintiff claims he was then ordered for a second time to submit to restraints, and that before he was able to comply, corrections officers forcibly removed him from his cell. Plaintiff further alleges that corrections officers sprayed him with a chemical agent several times during the extraction, while redirecting a video camera so that it would not record their use of the chemical. After the extraction, plaintiff claims, corrections staff

caused him to stand in a recreation area for four to five hours in ambulatory restraints without being permitted to use the restroom. Plaintiff also claims that corrections staff encouraged him to wash his skin and eyes using warm water, even though they knew that the water would reactivate the chemical agent. Following the incident, plaintiff claims, corrections staff provided him with false incident reports. Finally, he claims that he received disciplinary sanctions on the basis of these reports, including placement in administrative segregation and loss of good conduct time and commissary privileges.

Plaintiff asserts that "soon after the incident" he wrote a letter to MDC Warden Michael A. Zenk in which he detailed the events surrounding the cell extraction. Pl.'s Aff. at 3. Having received no response, plaintiff claims, he wrote another letter to Zenk "stating the same facts and requesting that the incident be investigated and appropriate actions be taken." Id. Plaintiff also asserts that "[t]wice during the months of November and December [2003 he] filed 'Inmate Request for Informal [R]esolution' [forms] (BP-8's) and received no response." Id. Defendants implicitly challenge the veracity of plaintiff's account, noting that according to their computerized index of administrative remedy requests, plaintiff first filed a BP-8 on January 23, 2004. Decl. of BOP Staff Attorney Rina Desai ¶¶ 4, 8, 17.

On his January 23, 2004 BP-8, plaintiff wrote:

> On 10/29/03 I was subjected to a use of force by Lt. Cush. He sprayed me with a chemical agent for allegedly refusing to submit to restraints and again once I was taken to the recreation deck outside of the camera's view. This use of force was not done in accordance to Program Statement 5566.05 sect. 552.22b "Force may not be used to punish an inmate" and there was no attempt at confrontation [avoid]ance procedures as put forth in section 552.23 of Program Statement 5566.05. I have evidence and witnesses and prov . . . allegations.

Pl.'s Mem. Opp. Summ. J., Ex. 1.

2

On March 9, 2004, the BOP offered a one-line response: "Per Lt. Cush we were within Bureau policy in reference to the above complaint." Id.

On March 10, 2004, plaintiff filed a "Request for Administrative Remedy" form ("BP-9"), on which he wrote:

> I am exhausting my administrative remedies before I file suit for monetary damages. On 10/29 [I wa]s subjected to a use of force by Lt. Cush. He sprayed me with a chemical agent for allegedly refusing to submit to restraints [and ag]ain once I was taken to the recreation deck outside of the camera's view. This use of force was not done in accordance to [Progra]m Statement 5566.05 sect. 552.22 B. "Force may not be used to punish an inmate" and there was no attempt at confrontation [avoidan]ce procedures as put forth in section 552.23 of Program Statement 5566.05. I have evidence and witnesses and can fully prove [alleg]ations if given a fair opportunity. Lt. Cush's disregard for policy is exhibited in his response to my BP8. [He n]ever addressed the disregard for the above mentioned policy statement.

Pl.'s Mem. Opp. Summ. J., Ex. 2.

On April 16, 2004, Zenk responded in writing to plaintiff's BP-9. Pl.'s Mem. Opp. Summ. J., Ex. 3. The full text of Zenk's response follows:

> This is in response to your Request for Administrative Remedy, dated March 10, 2004, wherein you allege that staff used excessive force and have a pattern of intimidation in the Special Housing Unit. Specifically, you allege that you were subjected to being sprayed with a chemical agent during a cell extraction on October 29, 2003. You request resolution to this matter.
>
> The incident that you are referring to is currently being investigated by the appropriate Bureau of Prisons officials. If any evidence discovered substantiates your claim, appropriate action will be taken. However, you will not be informed of the outcome of this investigation.
>
> Based on the above information, your request for Administrative Remedy has been partially granted.
>
> If you are dissatisfied with this response, you may appeal to the Regional Director, Federal Bureau of Prisons, U.S. Customs House, 2nd and Chestnut Streets, Philadelphia, PA 19106, within 20 calendar days of the date of this response.

Id. Plaintiff asserts that he spoke to Zenk approximately every two weeks after receiving this response, and that Zenk "repeatedly gave [him] what [he] took to be assurances that [Zenk] was working toward resolving the issue." Pl.'s Aff. at 4.

On March 24, 2005, approximately eleven months after receiving Zenk's response to his BP-9, plaintiff filed a "Regional Administrative Remedy Appeal" ("BP-10"). Pl.'s Mem. Opp. Summ. J., Ex. 4. On his BP-10, plaintiff wrote:

> On 10/29/03 staff at this facility used illegal excessive force against me. 1) They claim they wanted me to leave my cell for cell rotation but I was only in the cell a few days [and] didn't even have property yet and wasn't scheduled for rotation and to top it off I was put back in the same cell after the[y] sprayed me with the gas. 2) There was no confrontational avoidance [done] (review the video) and you'll see that the reports are false. I would like this investigated, the guilty parties punished and monetary damages. I am exhausting my administrative remedies. In addition to this the reports said I was only sprayed once. But if you review the tapes you will see that my back was sprayed. Then I was brought out of the cell handcuffed, the camera was moved and I was sprayed in the face. Look at the tape, how did my face get drenched with the chemical?

Id. Plaintiff asserts that the Regional Director found his BP-10 untimely and refused to answer it unless he could provide a letter from prison officials excusing his perceived lateness. Pl.'s Aff. at 4. Plaintiff claims to have requested such a letter from numerous BOP staff members, to no avail. Id.

On April 3, 2005, plaintiff filed a "Central Office Administrative Remedy Appeal" ("BP-11"), which was dismissed on grounds his BP-10 had been untimely. Id. Plaintiff filed another BP-11 on May 28, 2005, and again it was dismissed. Id. On his second BP-11, plaintiff wrote:

> I submitted a BP11 around the beginning of April and I never received a response. I was subjected to an illegal excessive use on 10/29/03. 1) They claim they wanted me to leave my cell for cell rotation but I was only in the cell a few days (I didn't even have property yet), wasn't scheduled for rotation and I was placed into the same cell after they sprayed me with the gas. 2) There was no confrontational

4

avoidance done (review the video) and you'll see that the reports are false. I sent all of my BP10 and 11s late because I misunderstood the warden's response and now that I'm sure what he meant <u>I'm not satisfied</u> with it. I would like this investigated, the guilty parties punished [and] monetary damages. I am exhausting my administrative remedies <u>again</u>.

Pl.'s Mem. Opp. Summ. J., Ex. 5.

On June 12, 2005, plaintiff filed this action.

## DISCUSSION

Though he originally sued defendants in their individual and official capacities, plaintiff now concedes that sovereign immunity bars <u>Bivens</u> actions against federal agents in their official capacities. Defendants argue that they are entitled to summary judgment with respect to plaintiff's remaining claims, because plaintiff failed to exhaust his administrative remedies. For the reasons explained below, the Court declines to grant summary judgment for defendants.

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." <u>White v. ABCO Eng'g Corp.</u>, 221 F.3d 293, 300 (2d Cir. 2000) (quoting <u>Taggart v. Time Inc.</u>, 924 F.2d 43, 46 (2d Cir. 1991)). A court must draw all inferences from the underlying affidavits, exhibits, and depositions "in the light most favorable to the party

opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995).

Furthermore, where the plaintiff is proceeding pro se, a court "read[s] his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

**B.      Exhaustion**

The Prison Litigation Reform Act ("PLRA") declares: "No action shall be brought with respect to prison conditions under [federal law] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA requires exhaustion in "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). It aims to guarantee that prison officials have a chance to resolve problems administratively before prisoners seek relief in the courts: "Congress enacted [the PLRA] to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 524-25.

The administrative grievance procedures for federal prisoners are set forth at 28 C.F.R. §§ 542.10-.19. First, an inmate must attempt informal resolution, which under BOP's procedures is accomplished by filing a form designated BP-8. Only then may the inmate file a formal request for relief by filing a BP-9: "[A]n inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request

for Administrative Remedy." 28 C.F.R. § 542.13(a). The inmate must file the BP-9 within twenty days of "the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The twenty-day limit may be extended "[w]here the inmate demonstrates a valid reason for delay." 28 C.F.R. § 542.14(b). Valid reasons include "an unusually long period taken for informal resolution attempts." Id. "An inmate who is not satisfied with the Warden's response" to a BP-9 may appeal to the Regional Director by submitting a BP-10 within 20 days of the response. 28 C.F.R. § 542.15(a). Finally, an inmate who is dissatisfied with the Regional Director's response to a BP-10 may appeal to the General Counsel by submitting a BP-11 within 30 days. Id. Any of these time limits may be extended where there is "a valid reason for delay." Id.

A prisoner does not "satisfy the [PLRA's] exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006). A plaintiff's failure to exhaust "where . . . administrative remedies have become unavailable after the prisoner had ample opportunity to use them" normally requires dismissal with prejudice. Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2003). However, there are three situations in which a failure to exhaust is excused: (1) when administrative remedies were not actually "available" to the prisoner; (2) when the defendants have forfeited the defense of non-exhaustion by failing to raise or preserve it, or are estopped from raising such a defense by their own conduct; and (3) when "special circumstances" justify the prisoner's failure to comply with the procedures for seeking an administrative remedy. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).

### 1. Plaintiff's BP-9

In support of their contention that plaintiff failed to exhaust his administrative remedies, defendants first claim that his initial formal grievance (BP-9) was untimely. It is undisputed that plaintiff filed his BP-9 on March 10, 2004, well beyond the twenty-day limit for filing a BP-9 with respect to the October 29, 2003 incident at issue here. Plaintiff asserts, however, that because he submitted his BP-9 within twenty days of BOP's initial response to his several BP-8's, it was timely. Pl.'s Mem. Opp. Summ. J. at 2. He claims, as well, that his delay in filing a BP-9 was the result of defendants' slow response to his BP-8. Pl.'s Rebuttal at 1-2. Defendants argue that "[t]here is no requirement under the BOP's grievance procedure that an inmate receive a response to his BP-8 before he can file a BP-9." Def.'s Reply Mem. Supp. Summ. J. at 3. For the reasons explained below, the Court declines to grant summary judgment for defendants on the basis of plaintiff's allegedly untimely BP-9.

As defendants observe, the regulations implementing the PLRA require that an inmate submit a BP-9 within twenty days of the incident about which he wishes to complain—not, as plaintiff implies, within twenty days of receiving a response to his BP-8. 28 C.F.R. § 542.14(a). Thus, the fact that plaintiff filed his BP-9 within 20 days of defendant's initial response to his BP-8's does not automatically render his BP-9 timely. However, as noted above, the regulations also provide that an inmate's failure to file a BP-9 in a timely fashion may be excused where the inmate demonstrates "a valid reason for delay," and that one valid reason is "an unusually long period taken for informal resolution attempts." 28 C.F.R. § 542.14(b). The Court interprets this regulation to mean that an inmate's failure to file a timely BP-9 may be excused where (1) he began his efforts at informal resolution within the twenty-day time limit, but (2) prison officials

then exhibited an "unusually long" delay in responding.

As defendants point out, the regulations do not require an inmate to wait for the conclusion of informal efforts to resolve a problem before filing a formal complaint. But they do appear to presume that prison officials will resolve an inmate's BP-8 before he files his BP-9: "[S]taff shall attempt to informally resolve the issue *before* an inmate submits a [BP-9]." 28 C.F.R. § 542.13(a) (emphasis added). Moreover, it appears that MDC's own procedures are consistent with this presumption. Plaintiff reports that when he complained to his "corrections counselor" that defendants had ignored his first two BP-8s, she did not suggest that he proceed to the next level by filing a BP-9, but instead advised him to file another BP-8. Pl.'s Aff. at 3. The Court notes, as well, a recent decision of another court in this district quoting certain language contained in MDC's inmate handbook. Though no party has alleged that plaintiff possessed or read a handbook containing this language, it offers some insight into BOP's general approach to handling grievances: "You will fill out the BP-8 and return it to the Counselor. The Counselor will investigate the complaint and prepare a response as soon as possible. *If you are not satisfied with the Counselor's response*, you may request a [BP-9]." Taylor v. United States, No. CR-02-0097, 2007 U.S. Dist. LEXIS 2100, at *16 (E.D.N.Y. Jan. 9, 2007) (emphasis added).

Here, plaintiff has established that a question of fact exists as to the first of the two elements enumerated above: whether he began his efforts at informal resolution within the twenty-day period specified under 28 C.F.R. 542.14(a). His affidavit indicates that he began trying to resolve the problem informally "soon after the incident" and that he filed two BP-8's "during the months of November and December," as well as a third BP-8 on January 23, 2004. Pl.'s Aff. at 3. Defendants implicitly contend that plaintiff never filed the first two BP-8's, see

Decl. of BOP Staff Attorney Rina Desai ¶¶ 4, 8, 17 (noting that BOP's computerized index of administrative remedy requests reflects that plaintiff filed no BP-8 before January 23, 2004). On a motion for summary judgment, however, the Court construes the facts in the light most favorable to the nonmoving party, in this case the plaintiff. On this basis, the Court finds that plaintiff has advanced facts sufficient to permit a reasonable jury to conclude that his efforts at informal resolution began within the twenty-day time limit—that is, on or before November 12, 2003. See Rhames v. Fed. Bureau of Prisons, No. 00 Civ. 4338, 2002 U.S. Dist. LEXIS 10133 at *11 (S.D.N.Y. June 6, 2002) ("An issue of fact is presented, between plaintiff's testimony in his affidavit that he sent the forms he discusses, and the absence of a corresponding record in BOP. On this motion [by defendants for dismissal or, alternatively, for summary judgment], I must resolve this issue in favor of plaintiff.").

Plaintiff likewise has established that a question of fact exists as to whether defendants' handling of his informal resolution efforts consumed "an unusually long period." Although the regulations do not impose a specific time limit within which BOP must respond to an inmate's informal resolution efforts, they do impose time limits on BOP's responses to formal filings, ranging from twenty days (for a Warden's response to an inmate's initial formal request) to forty days (for a General Counsel's response to an appeal). 28 C.F.R. § 542.18. In the absence of a specific requirement, it seems reasonable to expect that BOP's response to an inmate's informal efforts will require *fewer* than twenty days. Otherwise it would be impossible for the inmate to complete the informal process before filing his initial formal grievance, as the regulations and MDC's own procedures appear to contemplate, without missing his own twenty-day deadline. Here, however, plaintiff alleges, and defendants do not dispute, that defendants first responded to

plaintiff's informal efforts on March 9, 2004, when Warden Zenk issued a written response to plaintiff's BP-8 of January 23, 2004—46 days after plaintiff filed the BP-8 he claims was his third, and fully 118 days after the expiration of the 20-day period within which plaintiff was required to file his BP-9. At a minimum, in other words, defendants' response to plaintiff's informal filing consumed more time than is allowed under the regulations even for the highest level of formal administrative review. In conjunction with a finding that plaintiff had begun his informal efforts within the time limit, the Court finds, this would permit a jury to conclude that plaintiff had demonstrated a "valid reason" sufficient to excuse his delay in filing a BP-9. The Court therefore declines to grant summary judgment for defendants on the basis of plaintiff's allegedly untimely BP-9.

Defendants' request for summary judgment on the basis of plaintiff's late BP-9 filing fails for a second reason, as well. Courts of this circuit have found that prison officials may not raise a non-exhaustion defense based on the alleged untimeliness of a prisoner's filing where they accepted that filing and considered it on its merits. Harris v. Aidala, No. 03CV467, 2006 U.S. Dist. LEXIS 63443, at *6 (W.D.N.Y. Sept. 6, 2006); Griswold v. Morgan, 317 F. Supp. 2d 226, 230 (W.D.N.Y. 2004).

In Harris, a district court of this circuit rejected a non-exhaustion defense where prison officials had considered the merits of an inmate's grievance, rather than rejecting it as untimely, declaring: "Inasmuch as [the plaintiff's] grievance was processed and considered on the merits, the plaintiff exhausted his administrative remedies." 2006 U.S. Dist. LEXIS 63443 at *6. The court noted that there was no indication that the inmate had attempted to circumvent the PLRA by waiting to file his grievance until it was barred as untimely. Id. See also Giano v. Goord, 380

F.3d 670, 677 (2d Cir. 2004) ("[P]risoners may not circumvent the exhaustion requirement simply by waiting to bring a Section 1983 action until their administrative complaints are time-barred.").

Likewise, in Griswold, another district court found that an inmate had exhausted his administrative remedies where prison officials "chose not to rely on untimeliness as a ground for its decision [with regard to the inmate's allegedly untimely filing], but instead decided the grievance solely on the merits." 317 F. Supp. 2d at 230. There, the court analogized to habeas corpus cases, noting that in the habeas context, "'if the last state court to be presented with a particular federal claim reaches the merits,' any procedural bar is removed." Id. (quoting Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991)).

Courts of other circuits have adopted a similar approach. See Riccardo v. Rausch, 359 F.3d 510, 513 (7th Cir. 2004), cert. denied, 544 U.S. 904 (2005) ("[W]here a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action."); Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004) (overruled on other grounds by Jones v. Bock, No. 05-7058, 2007 U.S. LEXIS 1325 (U.S. Jan. 22, 2007)) ("If a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court.").

Here, upon receiving plaintiff's BP-9, defendants did not reject it as untimely. Instead, they accepted it, considered it on the merits, determined that an investigation was warranted, and reported to plaintiff that his request for an administrative remedy was "partially granted." Pl.'s Mem., Ex. 3. As in Harris, there is no indication that plaintiff sought to circumvent the PLRA.

12

In fact, plaintiff's BP-9 explicitly declares that his intent in filing was to "exhaust[] [his] administrative remedies . . . ." Id., Ex. 2. Under these circumstances, the Court declines to find that plaintiff failed to exhaust his administrative remedies based on the alleged untimeliness of his BP-9, and declines to grant summary judgment for defendants on this basis.

The Court notes, as well, that the anti-discrimination cases cited by defendants do not preclude a finding that defendants are barred from raising a non-exhaustion defense on the basis of the alleged untimeliness of plaintiff's BP-9. See Def.'s Mem. Supp. Summ. J. at 11 n.5. In Belgrave v. Pena, the Second Circuit held that government officials did not waive an exhaustion defense where they conducted an investigation in response to a complaint; here, by contrast, defendants not only investigated plaintiff's allegations, but "partially granted" his request for a remedy. 254 F.3d 384, 387 (2d Cir. 2001). And defendants mischaracterize Bruce v. U.S. Department of Justice, in which the Second Circuit held not that government agencies *must* have made and communicated to plaintiff the explicit finding of timeliness before it would bar them from raising an untimeliness defense, but instead that, having done so, they were barred. 314 F.3d 71, 74 (2d Cir. 2002). Defendants also appear to have overlooked the Bruce court's approval of a ruling of the Seventh Circuit that "when an agency decides the merit of a complaint, without addressing the question of timeliness, it has waived a timeliness defense in a subsequent lawsuit." Id. at 75 (quoting Ester v. Principi, 250 F.3d 1068, 1071-72 (7th Cir. 2001)).

### 2.     Plaintiff's BP-10

Defendants next argue that plaintiff failed to exhaust his administrative remedies by

13

submitting his BP-10 approximately eleven months after receiving defendants' initial response to his BP-9—well beyond the twenty days permitted under 28 C.F.R. 542.15(a). Plaintiff responds by suggesting that the twenty-day time limit for filing a BP-10 would have begun only upon a *denial* of the relief he sought in his BP-9, rather than upon the Warden's April 16, 2004 response to his BP-9, which "partially granted" his request for an administrative remedy. In the alternative, plaintiff argues that even if his interpretation of the regulations is incorrect, and his BP-10 was untimely, his untimely filing was justified by "special circumstances." Pl.'s Mem. Opp. Summ. J. at 4 (quoting Berry, 366 F.3d at 88). Specifically, he claims that Warden Zenk offered him certain "assurances" that led him to believe he need not appeal Zenk's response to his BP-9. Pl.'s Aff. at 4. For the reasons explained below, the Court declines to grant summary judgment for defendants on the basis of plaintiff's BP-10.

Plaintiff's interpretation of the regulations is incorrect. The regulations state that an inmate "who is not satisfied with the Warden's response" to a BP-9 must appeal that response to the Regional Director by filing a BP-10 within twenty days. 28 C.F.R. 542.15(a). There is no requirement that the BP-9 have been denied. However, as plaintiff observes, and as noted above, the Second Circuit has announced that "'[s]pecial circumstances' may exist that amount to a 'justification' for not complying with administrative procedural requirements." Giano, 380 F.3d at 677 (quoting Berry, 366 F.3d at 88). More specifically, there is sufficient justification for an untimely filing where circumstances exist "which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way." Id. at 678.

In Giano, the plaintiff sued prison officials for tampering with his drug-test results. Id. at 672-73. Instead of filing a required grievance, he stated his allegations during the appeal of his

14

disciplinary conviction for drug use. Id. at 676. The court excused his failure to grieve properly because he "reasonably interpreted DOCS regulations to mean that his only administrative recourse was to appeal his disciplinary conviction." Id. Indeed, the plaintiff's interpretation, though incorrect, was so reasonable that a federal district court had adopted it. Id. at 679 (citing Samuels v. Selsky, No. 01 Civ. 8235, 2002 U.S. Dist. LEXIS 17089 (S.D.N.Y. Sept. 12, 2002)). A plaintiff may survive summary judgment on a special circumstances theory even without producing such incontrovertible evidence of reasonableness. Hemphill, 380 F.3d at 690 (vacating grant of summary judgment for defendants where the plaintiff's interpretation of grievance regulations was "not manifestly meritless.").

Plaintiff's interpretation of the regulation is in conflict with its plain language. However, in support of his reading, plaintiff quotes a ruling of a court in this circuit, also cited by defendants, in which the court offered a view of 28 C.F.R. 542.13(a) that is essentially identical to his own: "If the formal request [BP-9] is *denied*, the inmate must appeal to the [Regional Director] within twenty (20) days of the warden's decision." Pl.'s Mem. Opp. Summ. J. at 3 (quoting Barney v. Bureau of Prisons, No. 02-CV-5284, 2004 U.S. Dist. LEXIS 24691, at *5 (E.D.N.Y. Dec. 8, 2004) (emphasis in plaintiff's submission)). Thus plaintiff's view of the regulations, while incorrect, is not "manifestly meritless."

More importantly, defendant alleges that Warden Zenk encouraged him to believe that even after he received a written response to his BP-9, the time within which he would be permitted to file a BP-10 had not begun to run. He claims that he spoke with Zenk on a biweekly basis after receiving Zenk's response to his BP-9, and that Zenk "repeatedly gave [him] what [he] took to be assurances that [Zenk] was working toward resolving the issue." Pl.'s Aff. at 4. He

15

claims that Zenk made such statements as "We're still looking into the incident," and "Be patient, Rome wasn't built in a day." Pl.'s Mem. Opp. Summ. J. at 1.

At the same time, Zenk provided plaintiff with a written response that appears almost certain to have confused him as to the need for an immediate appeal (notwithstanding defendants' insistence that "there was nothing remotely ambiguous" about the response, Def.'s Reply Mem. Supp. Summ. J. at 5). As defendants point out, the response informed plaintiff that he had twenty days in which to file his BP-10: "If you are dissatisfied with this response, you may appeal . . . within 20 calendar days of the date of this response." Pl.'s Mem. Opp. Summ. J., Ex. 3. At the same time, however, it failed to convey clearly to plaintiff the crucial fact that this was Warden Zenk's final decision on his case.

Instead, Zenk's written response informed plaintiff that his request for an administrative remedy had been "partially granted," without any indication of what "partially granted" might mean, and omitting any mention of a concomitant partial *denial*—leaving open the possibility that plaintiff's request might be *entirely* granted in a future ruling. Id. The language of this response, if not actually calculated to discourage plaintiff from filing a prompt appeal, appears likely to have done so in this case. Indeed, a reasonable inmate, in this situation, might have assumed that there was no unfavorable ruling from which he might appeal. See Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir. 2004) ("[I]t would be counterintuitive to require inmates who win during the grievance process to appeal their victories.").

Moreover, Warden Zenk's response informed plaintiff that the incident was "currently being investigated." Pl.'s Mem. Opp. Summ. J., Ex. 3. Curiously, the response included the caveat that BOP would not inform plaintiff of its findings—raising questions about whether BOP

16

actually intended to conduct the promised investigation. Even with the caveat, the fact of an ongoing investigation, combined with the fact that plaintiff could and did inquire of Zenk on a regular basis about the investigation's progress, Pl.'s Aff. at 4, appears likely to have encouraged plaintiff to believe that Zenk's response of April 16, 2004 was *not* BOP's final word on the subject of his grievance—and thus did not trigger his final opportunity to appeal.

While the Court appreciates the difficult challenges BOP officials face in responding to large numbers of inmate complaints regarding a wide array of issues, an additional observation is necessary. No one's interests are served where BOP communicates with inmates using language that is confusing and susceptible of misinterpretation, as is Warden Zenk's April 16, 2004 response to plaintiff's BP-9. Ordinarily, there is nothing to prevent BOP from responding to inmate grievances in a manner that is prompt, straightforward, and clear. Doing so will help ensure that the administrative remedy program accomplishes the purpose for which it was created—permitting inmates a fair and expeditious review of issues relating to their confinement—while also avoiding needless and costly litigation over questions of exhaustion. When an inmate seeks administrative remedies, the regulations require him to behave in a manner that is "honest and straightforward." 28 C.F.R. § 542.11(b). BOP's replies to inmate grievances should meet the same standard.

Defendants are correct that the regulations require an inmate who is "dissatisfied" with the response to his BP-9 to appeal by filing a BP-10 within twenty days. But Warden Zenk's statements to plaintiff and his response to plaintiff's BP-9 appear sufficient to have induced plaintiff to "wait and see," rather than adopting a posture of dissatisfaction and appealing an administrative ruling that was both partially satisfactory and apparently provisional. To the

extent that Zenk's representations and the ambiguity of his written response caused plaintiff to believe that he should delay filing his BP-10 beyond the twenty-day period permitted under the regulations, the Court finds that they constitute "special circumstances" "which might understandably [have led plaintiff] to fail to grieve in the normally required way," Giano, 380 F.3d at 678, and therefore justify the lateness of his filing. Accordingly, the Court declines to grant summary judgment for defendants on the basis of plaintiff's BP-10.

### 3. Plaintiff's Post-Extraction Claims

Defendants' final argument is that plaintiff raises claims that he did not raise in his administrative grievances, and that the unraised claims are unexhausted. Specifically, defendants allege that plaintiff's grievances did not include his claims of (1) spending several hours in ambulatory restraints without being permitted to use the restroom; (2) being advised to wash with warm water; and (3) receiving two false incident reports that resulted in undeserved punishment. However, as plaintiff observes, "[u]ncounseled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading." Johnson, 380 F.3d at 697. As noted above, the PLRA seeks to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter, 534 U.S. at 524-25. The Court finds that plaintiff's BP-8, BP-9, and BP-10 forms, which alleged that corrections officers mistreated him during a cell extraction on a particular day, were more than adequate to accomplish this goal.

## CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment is denied.

SO ORDERED.

Dated: Brooklyn, New York
February 13, 2007

/signed/
_____
RAYMOND J. DEARIE
United States District Judge